**In re MORRIS SENIOR LIVING, LLC, Morris Real Estate Holdings II, LLC, Debtors.**

No. 12–05364.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 24, 2014.

Brad Berish, Alexander F. Brougham, Nathan Q. Rugg, Adelman & Gettleman, Ltd., Chicago, IL, for Trustee.

Stephen G. Wolfe, Chicago, IL, for U.S. Trustee.

Maurice J. Salem, Salem Law Office, Palos Heights, IL, for Debtor.

## AMENDED ORDER ON AMENDED MOTION FOR LEAVE TO FILE CLAIMS (Dkt. No. 339)

JACQUELINE P. COX, Bankruptcy Judge.

Non-debtor Morris Healthcare & Rehabilitation Center, LLC ("Morris Healthcare") and Lewis Borsellino ("Borsellino" and together with Morris Healthcare "Movants") seek leave of court in their *Motion for Leave to File Claim Against Trustee's Counsel For Fraudulent Inducement* ("Motion") to sue the trustee's counsel for statements he made or should have made in connection with litigation in this bankruptcy case. The Movants make the remarkable statement that if during discovery it is discovered that the trustee had knowledge of fraudulent inducement and allowed such, the claim will also be against the trustee. Oddly, the Movants do not seek leave herein to sue the trustee or present grounds in support of a claim against the trustee. Even more remarkable is the Movants' request for leave to sue counsel to Northbrook Bank & Trust Company (the "Bank") and the Illinois Department of Healthcare and Family Services ("IDHFS").

For the reasons noted herein, the Motion is DENIED.

## I. FACTS AND BACKGROUND

Prior to a 2013 bankruptcy sale of its assets, the Debtors owned and operated Morris Senior Living Facility, a supportive living facility at 1221 South Edgewater Drive in Morris, Illinois. *See Motion for Entry of an Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Extending the Automatic Stay to Membership Interests in Morris Senior Living, LLC,* Bankruptcy Case 12–005364, dkt. no. 6, p. 2. The Debtors had been owned by the same parties who own Movant Morris Healthcare, which operated a nursing home next door to the Debtors' facility. *Response of Chapter 11 Trustee and His Counsel in Opposition to the Amended Motion For Leave to File a Claim Against Trustee's Counsel and Others for Fraudulent Inducement,* dkt. no. 351, p. 3.

## II. LEGAL ISSUES

A trustee in bankruptcy works for the bankruptcy court that appointed or approved his or her appointment, administering property that has come under the court's control by virtue of 11 U.S.C. § 541(a) of the Bankruptcy Code ("Code") which provides that at the commencement of a bankruptcy case, a debtor's property becomes property of the bankruptcy estate.

A trustee in bankruptcy may not be sued unless the court that appointed him or her allows the claimant to proceed. *Barton v. Barbour,* 104 U.S. 126, 136, 26 L.Ed. 672 (1881); *In re Linton,* 136 F.3d 544, 545 (7th Cir.1998). A party seeking leave to sue a trustee "must make a prima facie case against the trustee, showing that its claim is not without foundation." *In re National Molding Co.,* 230 F.2d 69, 71 (3rd Cir.1956) (citing *Dunscombe v. Loftin,* 154 F.2d 963, 966 (5th Cir.1946) and *Driver–Harris Co. v. Industrial Furnace Corp.,* 12 F.Supp. 918, 919 (W.D.N.Y. 1935)).

A bankruptcy trustee owes fiduciary duties to the debtor's estate and its creditors. *In re Chicago Art Glass, Inc.* 155 B.R. 180, 187 (Bankr.N.D.Ill.1993) citing *In re Melenyzer,* 140 B.R. 143 (Bankr. W.D.Tex.1992). As the court noted in *In re Kids Creek Partners, L.P.,* it is not as clear "as to the extent these duties are owed by Special Counsel for the Trustee, but for purposes of this discussion it will be assumed that fiduciary duties of any counsel for Trustee to the estate and its

creditors are the same as those due from the Trustee." *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 560 (Bankr.N.D.Ill. 2000). This court also assumes that a trustee's counsel owes fiduciary duties to the bankruptcy estate and to its creditors.

Morris Healthcare claims that it once owned a Skilled Living Facility Certificate ("SLF Certificate") allowing it to operate a skilled living facility. SLF Certificates are issued by the State of Illinois through its Department of Healthcare and Family Services.

According to Morris Healthcare, owners of SLF Certificates enroll medical providers to operate skilled living facilities pursuant to 89 Illinois Administrative Code 140.11. Morris Healthcare appointed Debtor Morris Senior Living, LLC ("Morris Senior Living") as the medical provider for the Morris Senior Living Facility. Morris Healthcare alleges that Debtor Morris Senior Living was not licensed to operate the Skilled Living Facility ("SLF"), but was the SLF's medical provider based on Morris Healthcare's state-issued SLF Certificate. Morris Healthcare alleges that as an SLF Certificate owner it can change providers at any time. *See* Motion, at ¶ 9.

Morris Senior Living, LLC and Morris Real Estate Holdings II, LLC ("Morris Real Estate") filed for bankruptcy relief on February 14, 2012 under chapter 11 of the Code. Morris Real Estate owned the real estate where Morris Senior Living, LLC operated the SLF. On February 14, 2012, the Bank, a secured creditor herein, conducted a sale pursuant to the Uniform Commercial Code at which it purchased the membership interests of Debtor Morris Senior Living.

On March 21, 2013, this court approved the sale of substantially all of the Debtors' assets. *See* dkt. no. 248. The Movants may be under the impression that the trustee sold its SLF Certificate in this effort. It did not. The court order authorizing the sale was entered on March 21, 2013 ("Sale Order"). *See* dkt. no. 248. The Movants (along with Morris Real Estate) appealed the Sale Order. *See* dkt. no. 255. An Amended Notice of Appeal of the Sale Order was filed on April 1, 2013. *See* dkt. no. 267.

On May 9, 2013, District Judge Matthew Kennelly ruled that the SLF Certificate was not sold as part of the court-approved sale. *See* Case 1:13–cv–02457, dkt. no. 21, May 9, 2013, ¶ 3. The District Court dismissed the appeal. The Movants' efforts herein are an effort to relitigate the issues resolved by the Sale Order and District Judge Kennelly's order: the SLF Certificate was not sold.

## A. Res Judicata

▮ The Movants are precluded from relitigating this issue by the principle of res judicata. Res judicata, or claim preclusion, bars the same parties or their privies from relitigating any issue that was raised in a prior judgment or could have been raised in a prior action. Res judicata is a judicial doctrine whose purpose is to ensure the finality of judicial decisions. Application of this doctrine requires: (1) identity of the parties or their privies; (2) identity of the causes of action and (3) a final judgment on the merits in an earlier action. *Tartt v. Northwest Community Hosp.*, 453 F.3d 817, 822 (7th Cir.2006). The Movants are the same parties who challenged the Sale Order. The Movants are challenging whether Morris Healthcare's SLF Certificate was sold, the same issue resolved by two final judgments. The May 9, 2013 dismissal of their appeal is the second final judgment in an earlier action on the sale (the first final judgment was the March 21, 2013 Sale Order).

Judge Kennelly's order has not been appealed.

Movants allege that the Bank's counsel asked IDHFS to determine who owned the SLF Certificate and that the state responded that Morris Healthcare was the SLF Certificate owner. *See* April 26, 2012 letter to Kim Westerkamp, Exhibit A to Motion Exhibit M at Docket No. 337.

The Movants allege that pursuant to Illinois law, once Debtor Morris Senior Living had new owners, the Bank, it could no longer operate the SLF because its participation approval was not transferable. 89 Ill. Admin. Code § 146.215(e) states: "SLF certification is not transferable or applicable to any location, provider, management agent or ownership other than that indicated on the provider agreement."

Citing an April 2, 2012 transcript ("Transcript"), the Movants allege that the Bank's counsel fraudulently induced a judge to believe that Debtor Morris Senior Living owned the license to operate the facility, knowing that the Debtor did not own the license, and for that reason a trustee could be appointed under Code Section 1104 to run the operation. *See* Motion, ¶¶ 17–18.

This court reviewed the twenty-four page Transcript of the hearing, which was presided over by a another judge, but did not find proof of the Bank's counsel making such a statement. The Movants have not directed the court's attention to a specific page or line of the Transcript showing that the Bank's counsel made fraudulent inducements. The Transcript shows that at one point the judge stated that Morris Senior Living was licensed and certified by the State of Illinois to operate the facility. However, she also noted confusion regarding the ownership of the license. *See* Transcript, pp. 5, 10. It is unlikely that the Bank's attorney fraudulently induced or convinced the judge that Debtor Morris Senior Living held the license/SLF Certificate.

The Bank's attorney mentioned preventing Morris Healthcare from taking adverse action with respect to the SLF Certificate. This may mean that the Bank's attorney thought that Morris Healthcare owned or exercised authority over the SLF Certificate, in contrast to the Movants' position that the Bank's attorney fraudulently told the court that Morris Healthcare did not own the SLF Certificate. This refutes the Movants' allegation that he fraudulently induced the court to believe that Debtor Morris Senior Living owned the SLF Certificate. *See* Transcript, p. 19. The court has seen no evidence that the judge who heard this matter that day was fraudulently induced by the Bank's attorney regarding the facts.

In contrast to the Movants' assertion that the judge hearing the matter was misled about ownership of the SLF Certificate on April 2, 2012, an Assistant U.S. Trustee stated at the hearing that he was aware of the certification issues. He was concerned about whether the nondebtor entity that owned or held that SLF Certificate would cooperate with the Bank under various scenarios. *See* Transcript, pp. 17–19. There was general confusion about which entity held the SLF Certificate. The court did not rule definitively on which entity owned the SLF Certificate. The court appointed a trustee to manage the Debtors' affairs out of concern for the facility's patients, in part due to the confusion regarding the ownership issue. *See* Transcript, pp. 3–22. That order was not appealed. The effort to sue the trustee's attorney because the court was misled is an attempt to relitigate an issue that

should have been challenged by way of an appeal of the relevant order. The same parties to the trustee appointment matter, Movants Morris Healthcare and Borsellino, are the parties herein. The identity of cause of action requirement for a finding of res judicata is satisfied herein: the Movants seek to vindicate their rights as purported owners of an SLF Certificate, an issue which was at the heart of the matter heard on April 2, 2012. The two unappealed orders satisfy the res judicata requirement of a final order on a previous cause of action. Res judicata applies herein; the Movants can not relitigate settled issues.

The SLF Certificate held by Morris Healthcare became useless when it no longer owned a facility. *See* Exhibit H to the Motion, Notice of Intent to Terminate Certification/Provider Agreement and Right to a Hearing, Allegations of Non-compliance, ¶¶ 11–12. At paragraph 12 therein it is alleged that:

> [s]ubsequently discovered information showed that Lewis Borsellino and Kimberly Westerkamp were not the owners of Morris Senior Living, on or about April 26, 2012, so the requirement to be the owner of the certification, that the owner must enroll and execute a provider agreement with the Department was no longer fulfilled by Lewis Borsellino and Kim Westerkamp's ownership of both Morris Healthcare and Rehabilitation Center, LLC and Morris Senior Living, LLC, specifically. . . .

### B.  Elements of Fraudulent Inducement

The Movants complain that when the attorneys for the trustee and the Bank failed to mention certain facts at court hearings on April 2, 2012 and March 5, 2013, they committed fraudulent inducement. *See* Motion, ¶ 32.

■ Fraudulent inducement requires proof of five elements:

1.  a false statement of material fact;

2.  known or believed to be false by the person making it;

3.  an intent to induce the other party to act;

4.  action by the other party in reliance on the truth of the statement; and

5.  damage to the other party resulting from such reliance.

*Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir.2003).

### 1.  False Statement of Material Fact

■ Paragraph 33 of the Motion states that the trustee's counsel made a false statement to the court about the ownership of the SLF Certificate. However, the record herein does not show that a false statement was made, or what fact was not disclosed, about ownership of the SLF Certificate or about who had authority to operate the facility. Many parties expressed confusion about this issue. The Movants have asserted no authority for their position that the attorneys had a duty to disclose information.

### 2.  Known or Believed to be False

There is no description of the statement alleged to be false, nor an indication that the person making it knew or believed it to be false

### 3.  Intent to Induce the other Party to Act

The Movants have proffered no evidence, direct or circumstantial, on whether the trustee's attorney had an intent to induce the other party to act.

At paragraphs 35 and 36, the Movants allege that the court was falsely induced to allow the trustee to deprive Morris Healthcare of its property without just compensation or due process. The trustee appointment did not deprive the Movants of their property without just compensation or due process; they had notice and an opportunity to be heard. If the sale or trustee appointment orders were improper, the Movants could have appealed the District Court's order finding that the SLF Certificate was not sold at the sale; they could have appealed the trustee appointment order. Addressing these issues herein by suing the trustee's counsel is inappropriate.

In any event, the court did not allow the trustee to take the SLF Certificate from Morris Healthcare; awarding such certificates is the province of the IDHFS, not the court.

### 4. Action by the Other Party in Reliance on the Truth of the Statement

The Movants have alleged no acts taken by them in reliance on the truth of a statement made by the trustee's attorney. The Movants have consistently asserted that Morris Healthcare owned the SLF Certificate and their conduct in this case has been consistent with their assertion that Morris Healthcare owned it. They have not acted with regard to the truth of something told to them by the trustee's attorney.

### 5. Damage to the Other Party Resulting From Such Reliance

The alleged damage is that the SLF Certificate no longer belongs to Morris Healthcare. A separate SLF Certificate may have been issued to the new owners by IDHFS. There is no suggestion that Morris Healthcare's SLF Certificate was given to another entity.

The IDHFS explained that "[a]s a result of the sale of Morris Senior Living in bankruptcy, the purchasers were required to satisfy HFS as to their qualifications to operate an SLF." The new owners applied for it. As IDHFS further explained in its response to this Motion, the entity that acquired the Debtors' assets at the Sale approved herein did not obtain Morris Healthcare's SLF Certificate; that entity obtained its own certificate. IDHFS also explained that in the interim from the date of the sale, IDHFS authorized the new owners to operate the Morris Senior Living Facility in the meantime because "SLF certification shall be deemed to extend to a new owner until the Department separately certifies the SLF under the approved new owner." Helton Declaration, Attachment 3 at 89 Ill. Admin. Code § 146.215(e)(7). *See Response by Illinois Department of Healthcare and Family Services To Morris Healthcare and Rehabilitation Center's Amended Motion for Leave to File a 42 U.S.C. § 1983 Claim,* dkt. no. 353, p. 9.

## III. CONCLUSION

The Movants have offered insufficient legal grounds and no evidence to carry their burden to demonstrate that their proposed claim against the trustee's attorney is not without foundation, i.e., that their claim is well-founded.[1]

This court lacks authority to decide whether the Movants can sue the IDHFS

---

1. The Court cautions that the efforts in this matter come perilously close to warranting sanctions under Federal Rule of Bankruptcy Procedure 9011(b)(2) and (3).

or the Bank's attorney and for that reason declines to rule on that part of the Motion.

The Amended Motion for Leave to File a Claim Against Trustee's Counsel for Fraudulent Inducement is **DENIED.**