**IN RE: Richard SHARIF, Debtor.**

**Case No. 09 B 5868**

United States Bankruptcy Court,
N.D. Illinois, Eastern Division.

Signed November 25, 2015

Richard Shariff, pro se.

**Order on Motion for an Order Vacating This Court's August 5, 2010 Order (Dkt. No. 194)**

Jacqueline P. Cox, Judge

This matter came before the Court on September 16, 2015, on the Motion of the

Estate of Soad Wattar, Haifa Sharifeh as Executrix, by and through its counsel Maurice James Salem,[1] requesting that the August 5, 2010 Order directing the turnover of property alleged to be Soad Wattar's be vacated for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 60(b)(4) ("Motion"). The Motion also seeks an accounting and return of the property.

## I. Jurisdiction

This Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. § 1334(a) which provides that district courts have original and exclusive jurisdiction of all cases under title 11, the Bankruptcy Code ("Code"). 28 U.S.C. § 157(a) allows the district courts to refer title 11 cases to the bankruptcy judges in their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a) which refers its bankruptcy cases to the judges of this court.

As allowed by 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on core proceedings arising in or under the Bankruptcy Code. Core proceedings include "proceedings affecting the liquidation of the assets of the estate"—28 U.S.C. § 157(b)(2)(O) and matters concerning the administration of the estate—28 U.S.C. § 157(b)(2)(A). This Motion is a core proceeding in which this Court may enter a final order because it seeks turnover of assets in the bankruptcy estate, an effort which affects both the liquidation of estate assets and administration of the estate.

In *Stern v. Marshall*, the Supreme Court held unconstitutional bankruptcy court jurisdiction over certain counter-claims based on state law. *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 2604–05, 180 L.Ed.2d 475 (2011).

■ Even though the Motion was filed in the bankruptcy court, the movant contends that it does not consent to this Court's jurisdiction over any state court claims, without identifying those claim(s). *See* Motion, dkt. no. 194, ¶ 14. The Motion does not address why the movant seeks relief more than five years after entry of the Order in issue. The doctrine of laches may weigh against granting the Motion. Laches addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it. *In re IFC Credit Corp.*, 420 B.R. 471, 477 (Bankr. N.D.Ill.2009), appeal dismissed, *In re IFC Credit*, 2010 WL 1337142 (N.D.Ill.2010); *aff'd, In re IFC Credit Corp.*, 663 F.3d 315 (7th Cir.2011).

The Background section of this opinion will include the history of an adversary proceeding related to this bankruptcy case and the assets the movant wants returned. That matter has been reviewed in the Seventh Circuit Court of Appeals and the United States Supreme Court. On May 26, 2015, the Supreme Court ruled that bankruptcy courts may enter final orders on *Stern* claims where they are prohibited from proceeding for constitutional reasons if the parties therein knowingly and voluntarily consent. *Wellness International Network, Ltd. v. Sharif*, —— U.S. ——, 135 S.Ct. 1932, 1944–45, 191 L.Ed.2d 911 (2015). On remand from the Supreme Court the Seventh Circuit Court of Appeals ruled that Debtor Richard Sharif forfeited his Stern argument, a personal right, by not raising it in a timely fashion.

---

**1.** A November 4, 2015 *Chicago. Daily Law Bulletin* article revealed that Mr. Salem is not a member of the Illinois Bar. There is no indication of record that he has sought and received permission to appear in this case pursuant to the District Court's Local Rule 83.14.

*Wellness International, Ltd. v. Sharif*, 617 Fed.Appx. 589 (Mem) (7th Cir.2015). The movant's effort to seek relief from a bankruptcy court, while contending that it does not consent to that court's jurisdiction over any state court claims may also amount to a waiver on the consent issue.

## II. Facts (Or Lack Thereof) to Support Motion to Vacate the August 5, 2010 Order

The movant seeking, pursuant to Federal Rule of Civil Procedure 60(b)(4), to vacate the August 5, 2010 Order is Haifa Sharifeh, as Executrix of the Estate of Soad Wattar. The Motion states that Soad Wattar's Estate was not served with the motion that sought the relief granted in the August 5, 2010 Order. That Order directed Wells Fargo Advisors Financial Network, LLC and the Hartford Financial Services Group, Inc. to turn over to Chapter 7 Trustee Horace Fox funds held in certain accounts. The Order directed Debtor Richard Sharif to account for and turn over to Trustee Fox all interests and accounts concerning him or the Soad Wattar Revocable Living Trust. It also ordered that the Debtor, Ragda Sharifeh and Haifa Kaj not interfere with and to cease any act to exercise control over property of the estate, including life insurance policies.[2] This Opinion's Background section will detail why the accounts were ordered to be turned over to Trustee Fox on August 5, 2010.

At the September 16, 2015 hearing this Court asked whether Soad Wattar was the trustee of an entity. The Court could not discern whether the movant or Soad Wattar was the trustee of a trust estate or a probate estate. The Court was told by Attorney Salem that Soad Wattar was not a trustee, nor was she a beneficiary. She

was the settlor of a trust. *See* Transcript of September 16, 2015 Hearing ("Transcript"), pp. 12–19. Because the August 5, 2010 Order was directed at a trust through its trustee, neither Soad Wattar as a trust's settlor nor anyone representing her was a party entitled to notice in the matter being resolved on August 5, 2010, the turnover of property to the Chapter 7 trustee. The trust's trustee, the Debtor Richard Sharif, was the proper party before the Court as both a debtor and the trustee of the trust whose assets were sought. He was sued individually and as the trustee in the adversary proceeding that sought a declaration that the trust and its assets were his alter ego.

Attorney Salem stated that the movant was an estate of a deceased person. However, when asked if he had any documents representing/documenting that she served in that capacity he said that the documents were with the executrix. When asked whether the estate was under court supervision he said no, it was a last will and testament, but that he believed that a daughter "has, and I will produce that—." Transcript, p. 21. He later said that he did not know if a probate estate had been opened. When asked to identify the beneficiaries of the probate estate, Attorney Salem said that he would produce the last will and testament. Transcript, pp. 12–36. His Reply herein does show how a probate estate based on a will is the appropriate party. He appears to allege that the movant represents a probate estate by indicating that she is an executrix; however, he also discusses a trust estate without clearly stating who the movant is in relation to a trust or probate estate. What entity does she represent and by what authority?

2. Is the movant herein, Haifa Sharifeh, the Haifa Kaj who was commanded by the August

5, 2010 Order "to cease any act to exercise any control over property of the estate"?

The Reply, without citation, states that this Court said that the Estate of Soad Wattar would have been entitled to notice if Soad Wattar was the settlor of the trust in question. Reply at dkt. no. 228, ¶ 2. No such ruling was made. The Reply also states in a conclusory manner that Exhibits E, H–S, X–M1, T, V, U and W attached thereto are overwhelming evidence that Soad Wattar was a trust's settlor and the person in control of it entitled to notice. Exhibit T is the affidavit of a Syrian Attorney who indicates that there is a court order establishing an unidentified estate in 2010; however, no such order is attached.

The Court is not convinced based on the scant record herein that the movant is a party entitled to notice of the motion on which the August 5, 2010 Order was based. There isn't even a suggestion of evidence or information that the property of the bankruptcy estate dealt with in the August 5, 2010 Order belonged to a person or entity not then before the court. If movant Haifa Sharifeh is Haifa Kaj who was scheduled as an unsecured creditor on the Debtor's Schedule F as a creditor owed $49,000, she had notice of the bankruptcy case as shown by the Bankruptcy Noticing Center's Certificate of Service at dkt. no. 9, dated February 25, 2009.

Trustee Fox's Response herein includes Soad Wattar's will which transfers all of her property to the Soad Wattar Revocable Living Trust which was held pursuant to a default judgment to be the alter ego of Debtor Richard Sharif. *See* Bankruptcy Case 09–05868, Amended Objection to Motion to Vacate, dkt. no. 209, p. 9 and Exhibit 7, the Last Will and Testament of Soad Wattar (the "Will"). Articles Three and Five of the Will bequeath her property to the trustee of the trust. The Will does not name movant Haifa Kaj as its executor or executrix.

For the reasons noted herein, the Motion for an Order Vacating This Court's August 5, 2010 Order will be denied. The movant has not shown that the Order is void under Federal Rule of Civil Procedure 60(b)(4), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024, due to lack of jurisdiction over Executrix Haifa Sharifeh.

## III. Background [3]

Prior to filing his chapter 7 petition, the Debtor, Wellness International Network Ltd. and others herein were involved in litigation in the United States District Court for the Northern District of Texas. The Debtor and several other parties filed a complaint on July 8, 2005 against Wellness International Network, Ltd., WIN Network, Inc., Ralph Oats, Cathy Oats, and Sheri Matthews (the "Wellness Parties") asserting fraud, RICO and other claims seeking damages of nearly $1 million. Amended Complaint Objecting to Discharge ("Amended Complaint"), case no. 09 A 0770, dkt. no. 10, p. 2 (the "Am. Compl."). The Debtor and his co-plaintiffs did not conduct any discovery in that action and did not cooperate with the Wellness Parties' efforts to obtain discovery. *Id.* The Debtor and his co-plaintiffs did not serve initial disclosures and failed to respond to written discovery. *Id.* The Debtor and his co-plaintiffs had admissions deemed against them for their failure to respond to discovery requests. WIN subsequently moved for summary judgment on the grounds that the admissions negated all claims asserted; the Debtor and his

---

**3.** This information is from this Court's July 6, 2010 Order in Adversary Proceeding 09– 00770.

co-plaintiffs failed to introduce any evidence in support of the claims. *Id.* The district court granted summary judgment on those grounds. *Id.* The Debtor and his co-plaintiffs appealed the entry of summary judgment to the Fifth Circuit in 2007. *Id.* The Fifth Circuit affirmed all of the district court's rulings and noted:

> A review of the record on appeal demonstrates that Appellant's untimely performance in this court mirrors a lengthy history in the district court of dilatoriness and hollow posturing interspersed with periods of nonperformance or insubstantial performance and compliance by Appellants and their counsel, leaving the unmistakable impression that they have no purpose other than to prolong this contumacious litigation for purposes of harassment or delay, or both. The time is long overdue to terminate Appellants' feckless litigation at the obvious cost of time and money to the Defendants by affirming all rulings of the district court but remanding the case to that court for the reinstatement of its consideration of Appellees' motion for attorney's fees. In so doing, we caution Appellants that any further efforts to prolong or continue proceedings in this court, including the filing of petitions for rehearing, will potentially expose them to the full panoply of penalties, sanctions, damages, and double costs pursuant to FRAP 38 at our disposal.

*Id.* at 2–3 (citing *Sharif v. Wellness Int'l Network, Ltd.*, 273 Fed.Appx. 316, 317 (5th Cir. April 8, 2008)). On remand the district court awarded the Wellness Parties attorneys' fees in the amount of $655,596.13 as a sanction against the Debtor and his co-plaintiffs. *See* Order on Renewed Mtn. for Attorney Fees, *Sharif v. Wellness Int'l Network, Ltd.*, 2008 WL 2885186 (N.D.Tex. July 22, 2008). The

Wellness Parties subsequently served the Debtor with post-judgment discovery and document requests. *Id.* The Debtor did not comply with the discovery requests and did not tender responsive documents. *Id.* The Wellness Parties filed a Motion to Compel post-judgment discovery on October 13, 2008. On November 19, 2008, the Texas district court ordered the Debtor to respond to outstanding discovery requests. *Id.*, at *1–2. Despite the district court's order compelling the Debtor to comply with discovery requests, the Debtor did not respond to the requests nor did he appear for a deposition. *Id.*

On December 4, 2008, the Wellness Parties filed a Motion for Civil Contempt against the Debtor for violating the Texas court's order on the Motion to Compel. *Id.* At a show cause hearing on January 13, 2009, at which the Debtor did not appear, the Texas court found clear and convincing evidence that the Debtor had violated several court orders compelling him to comply with outstanding discovery requests and the order to appear at the January 13, 2009 show cause hearing. *Id.*, at *3. The Texas court held the Debtor in civil contempt for his discovery violations and ordered him to respond to post-judgment discovery and reimburse his opponents for attorneys' fees and costs incurred to prepare and file the motion to compel and the motion for civil contempt. *Id.*, at *3–5. On February 24, 2009, two weeks after the Texas court's contempt ruling, the Debtor filed the instant bankruptcy case.

On August 24, 2009, the Wellness Parties filed adversary proceeding 09 A 00770 asking the court to deny Debtor a discharge pursuant to 11 U.S.C. § 727. Count I of the adversary complaint alleges that the Debtor "has continuously concealed property that he owns by holding such property in the name of the Soad

Wattar Living Trust ("Soad Wattar Trust") with improper intent to deceive" in violation of 11 U.S.C. § 727(a)(2). Amended Complaint ¶ 19. The Wellness Parties also asserted that the Debtor was the Trustee of the Soad Wattar Trust, exercised complete control over the trust and held out the assets in the trust as his own.

Count II alleged that the Debtor "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information" in violation of 11 U.S.C. § 727(a)(3). *Id.*, at ¶ 22.

Count III alleged that the Debtor knowingly and fraudulently made a false oath or account in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A). Specifically, the Wellness Parties contended that the Debtor failed to disclose companies in which he was an officer within the past six years despite the fact that part of Debtor's bankruptcy petition required the Debtor to list all businesses in which the Debtor was an officer, director, partner or managing executive of a corporation. The Debtor did not list any businesses. *See* Statement of Financial Affairs ("SOFA"), Voluntary Chapter 7 Bankruptcy Petition (the "Petition"), case no. 09 B 05868, dkt. no. 1, p. 29, ¶ 18. The Wellness Parties asserted that the Debtor was or had been an officer of Logan Square MRI and Diagnostic Center, Inc. ("Logan Square"); Allied Medical Management, Inc.; and Logan Square Surgery Center, Ltd.

Count IV alleged that the Debtor failed to explain the loss of $5 Million in assets that he claimed to own in a 2002 Washington Mutual Bank, N.A. Loan Application (the "Loan Application") in violation of 11 U.S.C. § 727(a)(5). The assets listed in the Loan Application included the following: (1) Logan Square; (2) Sharif Pharmacy; (3) Hermosa Medical Center; (4) three Banco Popular Accounts containing $90,000, $40,000 and $50,000; (5) $1,400,000 in a 401(k) retirement fund; and (6) $1,400,000 in real estate (collectively, the "Loan Application assets"). *See* Loan Application, Ex. No. 54 to Hearing Ex. No. 15, p. WM 0840–0841. Although the Debtor claimed that he did not own any of the property that he once claimed to own in the Loan Application, he has failed to explain its loss or disposition.

Count V sought a declaratory judgment that the Soad Wattar Trust was the alter ego of the Debtor because he exercised complete control over the trust. They asserted that there was a unity of interest and identity between the Debtor and the trust, that they were not separate and that continuing to recognize the Debtor and the trust as separate would promote injustice.

On April 15, 2010, in adversary proceeding 09 A00770, the Wellness Parties filed a Motion for Sanctions, Costs and Fees, and in the alternative, a Motion to Compel, Motion for Costs and Fees, and Motion to Modify Scheduling Order (hereinafter the "Sanctions Motion"). The court held a hearing on the Sanctions Motion on April 21, 2010. The Wellness Parties argued that the Debtor had failed to comply with discovery requests and missed discovery deadlines for document production and responding to interrogatories. This court entered an order on April 21, 2010 compelling the Debtor to comply with all outstanding discovery by April 28, 2010 or else an order of default would be entered against him. The hearing on the Sanctions Motion was continued to April 28, 2010.

On April 28, 2010, the Wellness Parties noted that the Debtor had produced some documents along with certain interrogatory responses on the afternoon of April 27, 2010. *See* May 24, 2010 Transcript of Sanctions Hearing, Wellness International, Ralph Oats, and Cathy Oats v. Richard

Sharif, Individually and as Trustee of the Soad Wattar Trust, p. 4 (the "Hearing Transcript"). This court continued the hearing to May 24, 2010 to allow the Wellness Parties time to assess whether the Debtor's document production and discovery responses were in compliance with the April 21, 2010 order compelling the Debtor to comply with all outstanding discovery. At the hearing on May 24, 2010, the Wellness Parties argued that the Debtor had not fully complied with discovery requests and should be sanctioned.

### A. Debtor Failed to Sign or Verify His Interrogatory Responses

Federal Rule of Civil Procedure 33(b), applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7033, requires in pertinent part:

(1) Responding Party. The interrogatories must be answered:

(A) by the party to whom they are directed; or

(B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

* * *

(3) Answering Each Interrogatory. Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

* * *

(5) Signature. The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed. R. Civ. P. 33(b)(1), (3) & (5). The Seventh Circuit Court of Appeals and the United States District Court for the Northern District of Illinois have determined that under Rule 33, answers to interrogatories must be verified and signed by the person answering the interrogatory, not only by the party's attorney. *See, e.g., Hindmon v. Natl.-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 619 (7th Cir.1982) (observing that interrogatory answers signed by an attorney and not the party violated "the clear mandate of Federal Rule of Civil Procedure 33(a)"); *accord Overton v. City of Harvey*, 29 F.Supp.2d 894, 901 (N.D.Ill.1998) (striking as summary judgment exhibit plaintiff's unverified answers to interrogatories signed only by attorney).

The Debtor's interrogatory responses as Trustee of the Soad Wattar Revocable Living Trust were signed by Debtor and Debtor's attorney but did not contain a statement verifying the interrogatory answers. *See* Hearing Transcript, p. 6; Richard Sharif's Answers to Interrogatories as Trustee of the Soad Wattar Revocable Living Trust, Hearing Ex. No. 3, p. 9 ("Sharif Trustee Interrog. Answers"). Similarly, the Debtor's individual interrogatory responses were signed by Debtor's attorney but did not contain a statement verifying the interrogatory answers. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, Hearing Ex. No. 4, p. 9 ("Sharif Individual Interrog. Answers"); Hearing Transcript, p. 6. They should have been signed by the Debtor.

The Debtor was not present at the hearing and his attorney did not explain why the interrogatory responses were not signed as required by the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

### B. Debtor's Failure to Provide Documents Requested by Plaintiffs and the Trustee.

The Wellness Parties asserted that the Debtor failed to produce numerous documents that were requested by them in

requests for production and by the Trustee at the Section 341 meeting. They argued that the Debtor failed to produce the documents despite the Court's April 21, 2010 order compelling the Debtor to comply with all outstanding discovery requests.

### 1. Washington Mutual Loan Application and Related Documents

During the Debtor's initial Section 341 meeting on March 25, 2009, the Wellness Parties and the United States Trustee ("U.S.Trustee") asked the Debtor to provide documents relating to the Loan Application wherein the Debtor asserted that he owned various assets. The assets listed in the Loan Application include the following: (1) Logan Square; (2) Sharif Pharmacy; (3) Hermosa Medical Center; (4) three Banco Popular Accounts containing $90,000, $40,000 and $50,000; (5) $1,400,000 in a retirement fund 401(k) account; and (6) $1,400,000 in real estate. *See* Loan Application as noted above at p. WM 0840–0841. The Section 341 meeting was continued to April 21, 2009 to allow the Debtor additional time to gather documents related to the Loan Application assets. *See* Sanctions Motion, p. 5. When the Debtor appeared at the continued Section 341 meeting he did not provide the U.S. Trustee or the Wellness Parties with the requested documents, and instead alleged that none of the Loan Application assets belonged to him. *Id.* The Debtor asserted that the Soad Wattar Trust owned all of the Loan Application assets, that the Debtor was the Trustee of the Trust, and that the Debtor had lied when he represented that he owned the assets listed in the Loan Application. *Id.* At his Rule 2004 examination the Debtor confirmed under oath that he testified at the Section 341 meeting that he lied in the Loan Application:

Q: The third sentence [of Debtor's answer to the Amended Adversary Complaint states], defendant testified at the 341 meeting that he lied on the loan application, that he did not own any of the real estate listed in the loan application, and that this property is owned by Soad Wattar Trust, his mother or sister. Do you see that statement? I'd be glad to orient you if you—

A: Yeah. Is that by the Answer, defendant admits?

Q: Uh huh.

A: Yeah. That on April '09—okay.

Q: Is that a true statement?

A: Yes, yeah.

May 13, 2010 Rule 2004 Examination of Richard Sharif, Wellness International, Ralph Oats, and Cathy Oats v. Richard Sharif, Individually and as Trustee of the Soad Wattar Trust, Hearing Ex. No. 15, pp. 60–61 ("Transcript of Debtor's 2004 Examination").

Based upon the Debtor's assertion that the Trust owned the assets listed in the Loan Application, the Wellness Parties and the U.S. Trustee requested documents relating to the formation and funding of the Soad Wattar Trust and documents evidencing ownership or transfer of the Loan Application assets. *See* Sanctions Motion, p. 5. The Section 341 meeting was continued again to June 3, 2009 to give the Debtor time to provide the requested documents. At the June 3, 2009 meeting the Debtor again failed to provide any of the requested documents. Sanctions Motion, p. 5.

Subsequent to the Debtor's refusal to provide the documents requested at his second and third Section 341 meetings, the Debtor brought a Motion for Protective Order requesting that he be granted leave to tender documents relating to the Loan

Application and the Soad Wattar Trust under a protective order to prevent disclosure of information to the Debtor's creditors and creditors' attorneys. *See* Case No. 09 B 5868, dkt. no. 23. The Debtor's Motion for Protective Order was denied on June 11, 2009. *See* Case No. 09 B 5868, dkt. no. 25. Despite this court's denial of Debtor's Motion for Protective Order, the Debtor never tendered any documents relating to the Loan Application, prompting the Trustee to file a Motion for Turnover of Documents from Richard Sharif to Horace Fox, Jr. ("Trustee's Motion") on October 20, 2009. *See* Case No. 09 B 5868, dkt. no. 40. This court granted the Trustee's Motion on October 27, 2009. *See* Case No. 09 B 5868, dkt. no. 42. The Debtor never complied with the Order to turn over the documents. *See* Sanctions Motion, p. 6.

The Wellness Parties served the Debtor with production requests requiring the Debtor to provide documents relating to each of the Loan Application assets. *See* Richard Sharif's Response to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 1, ¶¶ 15–22 ("Sharif Production Responses"). The Debtor failed to produce any documents relating to the Loan Application assets.

### 2. Richard Sharif Revocable Trust Documents

The Wellness Parties asserted that the Debtor failed to disclose all requested information and documents relating to the Richard Sharif Revocable Trust despite interrogatory and production requests requiring him to do so.

The Debtor listed the Richard Sharif Revocable Trust in his Petition as property owned by another person that the Debtor controlled. *See* SOFA, p. 27. Based on this disclosure, the Wellness Parties' interrogatories required the Debtor to identify each trust for the benefit of others that the Debtor had created or contribut-

ed to in the last five years. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, Hearing Ex. No. 4, p. 8, ¶ 11; Richard Sharif's Response as Trustee to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 2, p. 2, ¶ 11 ("Sharif Trustee Production Responses"). The Debtor responded "none" to the interrogatory, which is wholly inconsistent with his sworn bankruptcy schedules which list the Richard Sharif Revocable Trust on page 27. *See* Sharif Individual Interrog. Answers, p. 8, ¶ 11; Hearing Transcript, p. 9; SOFA ¶ 14.

The Wellness Parties also asked that the Debtor produce all documents referencing or evidencing any assets held in trust in which the Debtor claims or has an interest. Sharif Production Responses, ¶ 42 and Sharif Trustee Production Responses, ¶ 42. Again, despite Debtor's acknowledgment of having an interest in the Richard Sharif Revocable Trust (*See* SOFA, p. 27), he failed to produce any documents relating to that trust. Hearing Transcript, pp. 9–11.

### 3. Bank Statements and Financial Records

The Wellness Parties asserted that the Debtor failed to produce bank statements and records relating to financial transactions involving Mr. Sharif individually and the Soad Wattar Trust. They asked the Debtor to produce documents evidencing any account at a financial institution in which the Debtor was a designated signatory. Sharif Trustee Production Responses, p. 7, ¶ 44; Sharif Production Responses, pp. 7–8, ¶ 44. The Debtor failed to produce any documents responsive to these requests and instead listed the names and addresses of three financial institutions with corresponding account numbers. *See* Sharif Production Responses, p. 7, ¶ 44; Sharif Trustee Production

Responses, p. 7, ¶ 44; Hearing Transcript, p. 11.

The Wellness Parties also asked the Debtor to produce documents relating to any checking, savings, money market, passbook, demand deposit, negotiable order of withdrawal or trust account in which the Debtor had an interest. Sharif Trustee Production Responses, p. 8, ¶ 49; Sharif Production Responses, p. 8, ¶ 49. The Debtor failed to produce any documents responsive to this request, even though he had a personal account with JP Morgan Chase Bank; he acknowledged his lack of compliance during his 2004 examination. Transcript of Debtor's 2004 Examination, p. 166. Instead, the Debtor responded to the requests by stating that any such documents were available at JP Morgan Chase Bank and provided account numbers. Sharif Trustee Production Responses, p. 8, ¶ 49; Hearing Transcript, pp. 11–12.

During their investigation, the Wellness Parties independently discovered numerous documents that the Debtor failed to produce relating to assets held at AG Edwards in which the Debtor had an interest. They discovered account statements from AG Edwards for September to October of 2003 in the name of Soad Wattar, the Debtor's mother, and Richard Sharif as joint tenants. A.G. Edwards & Sons, Inc. Account Statements, Ex. No. 61 to 2004 Examination of Debtor ("AG Statements"). The account statements revealed that approximately $752,050 in assets were held by AG Edwards in the joint tenancy of Soad Wattar and Richard Sharif. *See* AG Edward Statements. At his Rule 2004 examination the Debtor admitted that while he had documents relating to this AG Edwards account, he did not produce them. Transcript of Debtor's 2004 Examination, pp. 172–173. The Debtor also stated that the assets in this AG Edwards account were transferred to Wachovia Bank, but the Debtor failed to produce any transfer documents. Transcript of Debtor's 2004 Examination, p. 174. The Debtor also failed to disclose the AG Edwards accounts in his bankruptcy petition. The Debtor failed to produce information or documentation regarding the AG Edwards account or its disposition despite interrogatories and requests for production requiring him to produce all documents evidencing any interest he had in any account after 2002 along with all documents showing the disposition or transfer of such accounts after 2002. *See* Sharif Trustee Production Responses, p. 8, ¶ 49; Sharif Individual Interrog. Answers, nos. 6–7; Hearing Transcript, pp.16–18.

The Wellness Parties also discovered a variable annuity held at AG Edwards for the benefit of the Debtor and his sister, Ragda Sharifeh, as joint tenants. They also found an AG Edwards statement showing the TransAmerica Triple Advantage VA with a valuation of $39,248. AG Statements, pp. AGE 0180–0181. Once again, the Debtor failed to provide information or produce documentation relating to this annuity despite receiving interrogatories and document requests requiring him to do so. Hearing Transcript, p. 22. At his 2004 examination the Debtor was unable to say where the $39,248 was. Transcript of Debtor's 2004 Examination, pp. 178–179.

The Wellness Parties estimated that approximately $912,000 in assets were held at AG Edwards for the benefit of the Debtor individually or jointly with his mother and his sister, yet the Debtor provided no information or documentation regarding those accounts. Hearing Transcript, p. 24.

The Debtor also failed to provide any information or documentation evidencing other accounts that he admitted to having

an interest in at his 2004 Examination. Hearing Transcript, pp. 26–31. The Debtor admitted to holding the following accounts but produced no documentation or information about the accounts in response to discovery requests: Soad Wattar Living Trust account at Banco Popular; account at Raymond Jones; and a checking account at JP Morgan Chase Bank. During his Rule 2004 examination, the Debtor admitted his failure to produce the requested documents:

1) Q: Sir, I'm just asking. You have not given me one single account statement for the trust [at Banco Popular], have you?

A: Account statement?

Q: Yes.

A: You mean, from like the investment firm?

Q: Yes.

A: There are boxes available. These are, you know—

Q: You have not provided us a single account statement, have you?

A: I did not. Again, I did not know that you needed that one. If not, it's available.

2) Q: Where are there accounts besides Banco Popular?

A: Banco Popular, absolutely, and whatever you need from Wells Fargo, I'll provide you with it.

Q: I'm just asking for the names of the companies—Wells Fargo and who else?

A: Wells Fargo, Wachovia, which is now Wells Fargo, has a mortgage payment for the house because it comes out of the mother's living trust every month. This is two—three. What else?

Q: Any investment firms like Smith Barney or Morgan Stanley? I'm just throwing out people that I can think of.

A: There is one she [Debtor's mother] has an account with Raymond James, since 2005, one account. I just remembered this. I believe that's all I know right now.

3) Q: I'm asking why have you not produced to me the JP Morgan Chase account statements as requested in discovery?

A: Counsel, I did list the only account that I have. I'm sorry if I didn't produce the statement available. I know there's a question, Counselor, that I need to reproduce because my lawyer would have told me to produce it. I went by the name of the bank and my account but—

Transcript of Debtor's 2004 Examination, pp. 107–109; 143–144. The Wellness Parties argued that even though the Debtor stated during the Rule 2004 Examination that he could produce documents relating to the undisclosed accounts, as shown above, the Debtor was grossly out of compliance with his discovery obligations despite the April 21, 2010 Order compelling him to comply with all outstanding discovery requests.

### 4. Conveyance, Disposal, or Transfer of Asset Documents

The Wellness Parties asserted, and Debtor Sharif's Answers to Interrogatories show, that the Debtor failed to provide information relating to the conveyance, disposal, or transfer of certain assets in which the Debtor once claimed an interest. *See* Sharif Individual Interrog. Answers and Sharif Trustee Interrog. Answers, pp. 6–7, ¶¶ 6–8. At his 2004 examination the Debtor admitted that he had once owned a 10% interest in the Logan Square business and had relinquished such interest. *See* Transcript of Debtor's 2004 Ex-

amination, p. 95. However, the Debtor never provided any information or documentation evidencing the disposition of his interest in Logan Square; he admitted the same at the 2004 examination despite having received Plaintiffs' interrogatories and requests for production inquiring about the disposition of his interest in Logan Square. *See* Transcript of Debtor's 2004 Examination, p. 96; Sharif Individual Interrog. Answers, p. 7, ¶¶ 6–8.

At his 2004 examination the Debtor denied ever having an ownership interest in Sharif Pharmacy. Transcript of Debtor's 2004 Examination, p. 61. However, he produced a 2002 federal income tax return which stated that he was the 100% owner of Sharif Pharmacy. *See* Transcript of Debtor's 2004 Examination, p. 68. After the Debtor was confronted with the inconsistency between his testimony and his 2002 federal income tax return he stated that he does not examine his tax returns, his accountant does and he does not understand them. *Id.* at 69. The Debtor admitted having a 10% ownership interest in the Sharif Pharmacy and that the 100% ownership interest listed in his tax return was an error. *Id.,* at 68. Whether the Debtor's ownership interest in Sharif Pharmacy was 10% or 100%, he produced no documentation evidencing the transfer of his interest in the pharmacy and acknowledged his failure to comply during the 2004 examination. *See* Transcript of Debtor's 2004 Examination, p. 72. The Debtor also admitted that he asked Sharif Pharmacy's office manager for responsive documents but did not undertake any efforts to obtain the documents. *Id.,* at 87.

### 5. Corporate Records

The Wellness Parties asserted that the Debtor failed to produce corporate records for Sharif Pharmacy and the Hermosa Medical Center after 2006. Their discovery requests sought production of corporate records for Sharif Pharmacy and Hermosa Medical Center. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2, ¶¶ 7–8; Sharif Production Responses, Hearing Ex. No. 1, ¶¶ 7–8. The Debtor never produced the requested documents even after entry of the April 21, 2010 Order compelling him to comply with all outstanding discovery requests. Hearing Transcript, pp. 34–36.

### 6. Documents Evidencing the Formation and Funding of the Soad Wattar Trust

The Wellness Parties asserted that the Debtor failed to produce documents relating to the formation and funding of the Soad Wattar Trust. Hearing Transcript, p. 38. They argued that those documents were critical because nearly everything the Debtor owned was in the Soad Wattar Trust.

The requests for production required the Debtor to produce documents establishing and funding the Soad Wattar Trust, evidencing the transfer of assets into the trust, and all other documents related to assets held in the trust. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2, ¶¶ 27, 45–46, 49–50; Hearing Transcript, pp. 38–41. The Wellness Parties specifically requested all deeds, records, titles, or other documents that related to assets in the name of the Soad Wattar Trust after 2002. The Debtor alleged that the Trust was funded with a $2,000,000 inheritance from his deceased father that came from an international wire transfer from Beirut, Lebanon through a financial entity in Dubai. Transcript of Debtor's 2004 Examination, p. 109. However, Debtor also admitted that he did not have any of the documents evidencing the wire transfers in his possession and that he had not produced such documents. Transcript of Debtor's 2004 Examination, pp. 110–111. The Debtor also admitted that except for

one asset, the Revere house, he failed to produce any documents evidencing transfers of assets into the Soad Wattar Trust since 1992. *Id.*, at 104–105. In summary, Debtor failed to produce documentation of the origin of the money and property in the Soad Wattar Trust.

The Wellness Parties also requested the 1992 trust instrument that purportedly established the Soad Wattar Trust. Sharif's Trustee Responses at ¶ 11 concern amendments to the Soad Wattar Trust and not the original document that established the Trust. Debtor admitted in his 2004 examination that he failed to produce the original trust instrument. Transcript of Debtor's 2004 Examination, p. 101.

### 7. Signed Tax Returns and Documents Used to Prepare Debtor's Tax Returns

The Wellness Parties argued that the Debtor failed to produce signed tax returns or any of the underlying source documents used to prepare tax returns. Hearing Transcript, p. 44. While they received some federal and state tax returns from 2003–2008 from the Debtor, not one of the tax returns received was signed. *See* Hearing Transcript, p. 44; Sharif Production Responses, ¶ 10 and Sharif Trustee Production Responses, ¶ 10. When the Debtor was questioned about the unsigned tax returns at his 2004 examination, he stated that he was 100% sure that the tax returns that went to the government were signed, but he never produced signed tax returns. *See* Transcript of Debtor's 2004 Examination, pp. 130–131. The Debtor also stated that he did not attempt to obtain signed tax returns from the IRS. *Id.*, at 130.

The Debtor also failed to produce the source documents used to prepare his tax returns; he admitted this at his 2004 examination. *Id.*, at 135.

### 8. Documents Evidencing Debts Owed to Debtor's Family Members

The Wellness Parties argued that the Debtor failed to produce any documents underlying the debts that he owed to his family members. *See* Sharif Production Responses & Sharif Trustee Production Responses at ¶¶ 34–37; Hearing Transcript, p. 54. The Debtor's bankruptcy petition listed several debts owed to his relatives: (1) $49,000 to Haifa Kaj, Debtor's sister; (2) $39,000 to Jamal Sharif, Debtor's brother; (3) $93,000 to Ragda Sharifeh, Debtor's wife (or sister); and (4) $90,000 to Soad Wattar, Debtor's mother. *See* Petition at Schedule F, p. 17; Hearing Transcript, p. 55. Based on these disclosures, the Wellness Parties requested that the Debtor produce documents referencing or evidencing the debts owed to the above family members. *See* Sharif Production Responses, Hearing Ex. No. 1 at ¶¶ 34–37; Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 34–37. The Debtor failed to produce any documents evidencing the amounts he owed to his relatives and asserted that those debts were created via oral agreements. *See* Sharif Production Responses, ¶¶ 34–37; Hearing Transcript, p. 56. The Wellness Parties contend, and the court agrees, that it is hard to believe that $271,000 was transferred as loans to the Debtor when no documents such as wire transfer forms, bank statements, canceled checks, emails, enclosure letters, etc. were created in doing so.

In response to the assertions regarding the Debtor's non-compliance, his attorney argued that while there may have been some deficiencies in his discovery responses, the Debtor made a good faith effort to comply with all of the discovery requests. Hearing Transcript, pp. 75–76. His attorney pointed out that the Debtor was initially unable to meet the discovery dead-

lines because he was in Syria attending to his ill mother who subsequently passed away. Hearing Transcript, p. 68. When the Court requested proof of the Debtor's whereabouts the Debtor's attorney produced airline tickets to Syria and a copy of the mother's death certificates. *Id.* This Court did not believe that the Debtor made a serious effort to comply with the discovery requests before or after his mother's death.

Debtor's attorney argued that the Wellness Parties' counsel did not call him to object to the sufficiency of the discovery responses before filing the motion for sanctions. Hearing Transcript, pp. 68–69. Debtor's attorney also asserted that the supplement to the Sanctions Motion did not contain the proper certification required by Northern District of Illinois Local Rule 37.2 certifying that the movant consulted with opposing counsel regarding the discovery defects before filing a motion pursuant to Federal Rule of Civil Procedure 26. Hearing Transcript, pp. 77–78. The Court noted that a phone call would have been futile because the Debtor was so grossly out of compliance with his discovery obligations. The Court also noted that the Sanctions Motion included the required certification. Sanctions Motion, p. 12.

The Debtor's attorney contended that he produced some documents after the Debtor's 2004 examination. He argued that he surmised at the Debtor's 2004 examination that the plaintiffs wanted more documents than they had received based on the questions that were posed to the Debtor. The Debtor's attorney took it upon himself to produce bank statements from several financial institutions relating to the Soad Wattar Trust, the Debtor's personal bank accounts and the Sharif Pharmacy. Hearing Transcript, pp. 70–71. Debtor's attorney did not specify which documents were produced after the 2004 examination so it

was unclear what was contained in the late production and whether the documents were responsive to the requests and why they were not produced sooner. The court noted that the Debtor's 2004 examination took place on May 13, 2010, so any documents produced after that were well outside of the April 28, 2010 deadline the court gave the Debtor to complete all outstanding discovery and prevented the Wellness Parties from questioning the Debtor about them at the Rule 2004 examination.

## IV. Discussion

### A. *Entry of Default Judgment*

■■■ This court has stated time and time again that the Bankruptcy Code provides extraordinary relief which requires extraordinary cooperation from debtors. This extraordinary cooperation encompasses full compliance with discovery requests in a timely manner. Failure to comply with discovery can result in the imposition of sanctions including a default judgment and an award of attorneys' fees and costs. *See, e.g., In re Golant,* 239 F.3d 931, 933–34 (7th Cir.2001) (affirming entry of default judgment against a debtor who failed to produce documents after the bankruptcy court compelled him to do so); *In re Thomas Consol. Indus.,* 2005 WL 3776322 (N.D.Ill.2005) (affirming dismissal of claims as a sanction for violating bankruptcy court's discovery orders compelling compliance with outstanding discovery requests).

It was apparent that the Debtor failed to comply with most of the discovery requests. The Court found that the Debtor's disclosures were inadequate given the order compelling the Debtor to comply with all outstanding discovery by April 28, 2010. At no time did the Debtor contend that he needed more time to comply with discovery requests. The Debtor's lack of compliance evidenced a pattern that con-

tinued from the time of the underlying litigation in Texas to the instant bankruptcy case and adversary proceeding.

As a sanction for Debtor's failure to comply with discovery requests, this Court entered default judgment against the Debtor and in favor of Plaintiffs in adversary proceeding 09 A 00770. Judgment was entered in favor of the Wellness Parties on all counts of their adversary complaint.

On Count I the Court found that the Debtor, with the intent to hinder, delay, or defraud the Wellness Parties transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one year before the filing of the petition in violation of 11 U.S.C. § 727(a)(2). Specifically, the Debtor failed to produce any documents regarding the assets in the Loan Application, which the Debtor once claimed to own, or what property was transferred into the Soad Wattar Trust. In addition, the Debtor failed to produce any documents evidencing the formation or funding of the Soad Wattar Trust, or the disposition of the $5 Million in assets listed in the Loan Application. The Court found that the Debtor transferred, removed, destroyed, mutilated, or concealed the documents with the intent to hinder or delay the Wellness Parties from discovering assets that could be used to satisfy the judgment entered in their favor by the Texas District Court.

On Count II the court found that the Debtor concealed, destroyed, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained in violation of 11 U.S.C. § 727(a)(3). Specifically, the Debtor failed to produce any documents showing how his financial condition changed from when he claimed to own the Loan Application assets.

On Count III the Court found that the Debtor knowingly and fraudulently made a false oath in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A). Specifically, the Debtor omitted material information from his bankruptcy schedules including the companies in which he was an officer within six years of the petition date.

On Count IV the Court found that the Debtor failed to satisfactorily explain the loss of the assets listed in the Loan Application in violation of 11 U.S.C. § 727(a)(5).

On Count V the Court entered a declaratory judgment and found that the Soad Wattar Trust was the alter ego of the Debtor/Defendant Richard Sharif because he treated its assets as his own property and it would be unjust to allow him to maintain that the trust was a separate entity.

The Defendant was directed to reimburse the Wellness Parties for attorneys' fees incurred to file and prosecute the Sanctions Motion and the supplemental sanctions motion filed after the Debtor's Rule 2004 Examination. The Debtor was directed to reimburse the Wellness Parties for costs incurred in obtaining the Debtor's Rule 2004 examination, including court reporter and videographer costs.

The Wellness Parties were allowed to submit an affidavit setting forth the attorneys' fees and costs associated with pursuing the Sanctions Motion and its supplement.

Due to the court's findings that the Debtor Richard Sharif had not carried out his discovery obligations and had violated 11 U.S.C. § 727, the court defaulted Richard Sharif on the Amended Adversary Complaint and:

1. Richard Sharif was prohibited from opposing the claims in adversary proceeding 09 A 00770;

2. Richard Sharif's answer to the Amended Complaint was stricken;

3. Default was entered in favor of the Wellness Parties and against Richard Sharif on Counts I through V of the Amended Complaint in 09 A 00770; and

4. Richard Sharif was denied a discharge pursuant to 11 U.S.C. § 727(a)(2)-(a)(6).

### B. *Barton Doctrine*

A trustee in bankruptcy works for the court that appointed or approved his or her appointment. Trustees administer property that comes under their control by virtue of 11 U.S.C. § 541(a) which provides that at the commencement of a bankruptcy case a debtor's property becomes property of the bankruptcy estate.

Bankruptcy trustees may not be sued unless their appointing court allows the claimant to proceed. *Barton v. Barbour*, 104 U.S. 126, 136, 26 L.Ed. 672 (1881); *Matter of Linton*, 136 F.3d 544, 545 (7th Cir.1998). A party seeking to sue a trustee "must make a prima facie case against the trustee, showing that its claim is not without foundation." *In re Morris Senior Living*, 504 B.R. 490, 491 (Bankr.N.D.Ill. 2014).

The effort to vacate the August 5, 2010 Order, if successful, would require the trustee to disgorge assets he has held, distributed and administered for several years. While the movant has not sought leave to sue the trustee, her Motion is an effort to sue Trustee Fox as the relief requested is directed against him. This effort to sue Trustee Fox, to seek relief against him is being pursued without leave of court. Applying the standard applicable to suing a trustee to this Motion, it is profoundly clear that the movant has not alleged a prima facie case against the trustee. She can not show that she has standing to seek anything from the bankruptcy estate and has not explained what property the trustee holds that rightfully belongs to an entity she represents. What probate or trust estate does she represent? What property was in that estate? What instrument transferred property to an entity the movant controls? The Wellness Parties and Trustee Fox have sought this information for several years to no avail. The Motion is deficient. It has no factual basis. It has no legal basis.[4]

## V. Conclusion

The Motion For An Order Vacating This court's August 5, 2010 Order is **DENIED**.

---

4. Other opinions regarding this matter are: Docket No. 69 (July 6, 2010) in Adversary Proceeding 09–0770; Docket No. 93 (March 9, 2011) in Bankruptcy Case 09–5868; Docket No. 94 (March 10, 2011) and Docket No. 60 (August 30, 2011) in Adversary Proceeding 10–2239.